IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| ALVIN ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00040 |
| | ) | |
| SERGEANT D.W. DAVIS and | ) | |
| CHRISTOPHER PARKER, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| LINDA ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:15-cv-00041 |
| | ) | |
| SERGEANT D.W. DAVIS and | ) | |
| CHRISTOPHER PARKER, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

      Before the court are Defendant Christopher Parker's Rule 12(b)(6) Motions to Dismiss in cases filed by Plaintiff Alvin Robinson (Case No. 4:15-cv-00040) and Plaintiff Linda Robinson (4:15-cv-00041) ("the Motions"). The parties do not object to the cases being consolidated for consideration of the Motions. The Motions were filed on October 8, 2015. The Plaintiffs filed timely responses, and Parker replied. I heard oral argument on the Motions on December 17, 2015, and I have reviewed the relevant parts of the Record and the arguments of counsel. The matter is now ripe for decision. For the reasons stated herein, I will grant the Motions in part and deny the Motions in part. Specifically, I will dismiss those counts alleging a violation of 42

U.S.C. § 1983 against Parker (Counts Three and Four of both Complaints). The counts alleging malicious prosecution and false imprisonment survive.

## I. STATEMENT OF FACTS AND PROCEDURAL BACKGROUND[1]

Plaintiffs Alvin and Linda Robinson ("Plaintiffs" or "Robinsons") are residents of Virginia Beach, Virginia, and are the parents of Maya Robinson.[2] Defendant Sergeant D.W. Davis ("Davis") is employed by the Sheriff's Department of Henry County, Virginia. Defendant Christopher Parker ("Parker") is a resident of Virginia and was, at all relevant times, the Athletic Director of Patrick Henry Community College ("PHCC").

During the fall of 2012, Maya Robinson was a student at PHCC and was a student member of the women's basketball team. During that season, the Robinsons received information that the coach of the women's basketball team was having an illicit and inappropriate relationship with a player on the team.[3] As a result, the Robinsons decided to remove Maya from PHCC, and requested a meeting with Parker to discuss the situation.

On December 12, 2012, the Robinsons went to Parker's office and "began questioning Parker about the coach of the Women's team, how and when a coaching change had been made, and why parents had not been informed." (Alvin Am. Compl. ¶ 6; Linda Am. Compl. ¶ 6.)[4] "Parker immediately became upset, belligerent and verbally aggressive and abusive towards [the

---

[1] The facts are taken from Plaintiffs' Complaints. As this stage, it is appropriate to accept Plaintiffs' factual allegations as true. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

[2] Alvin and Linda Robinson have each filed a Complaint against the same parties alleging the same facts and causes of action. Because there is no material distinction between the allegations of the two Complaints or the motions to dismiss filed in both cases, discussion of the facts and the law applicable to both cases are consolidated into a single opinion.

[3] All involved parties are adults over the age of 18. While the Robinsons consider the relationship illicit and inappropriate, there is no allegation that the alleged relationship was illegal.

[4] "Alvin Compl." refers to the Complaint filed in Case No. 4:15-cv-00040 [ECF No. 1-5], and "Linda Compl." refers to the Complaint filed in Case No. 4:15-cv-00041 [ECF No. 1-4].

- 2 -

Case 4:15-cv-00041-JLK-RSB   Document 19   Filed 12/30/15   Page 2 of 13   Pageid#: 423

Robinsons]." (Alvin Am. Compl. ¶ 7; Linda Am. Compl. ¶ 7.) The Robinsons allege that Parker yelled at them to get out of his office, told them he was not obligated to tell them anything, and threatened to call the police.

The Robinsons were "[s]hocked and insulted by Parker's behavior . . . ." (Alvin Am. Compl. ¶ 8; Linda Am. Compl. ¶ 8.) They stood up, left Parker's office, and went into the hallway. "At some point Parker began yelling, 'Don't hit me,' 'Don't touch me' although neither [of the Robinsons] had given any indication of physically threatening Parker." (Id.) The Robinsons left PHCC and returned to Virginia Beach. Plaintiffs asserts that, "[a]t no time [during their visit to the PHCC campus] did [either of them] threaten, act aggressively, confront, or in any way physically or verbally assault Parker or the assistant coach, and [they] took no action which could have made Parker or the assistant coach fearful or intimidated." (Alvin Am. Compl. ¶ 10; Linda Am. Compl. ¶ 10.)

Later that same day, Parker swore out a warrant against Alvin Robinson for felony abduction and kidnapping and misdemeanor assault, and against Linda Robinson for misdemeanor assault.[5] Plaintiffs allege that Sergeant Davis agreed to file Parker's charges despite the existence of a video tape "showing no criminal actions" by the Robinsons. (Alvin Am. Compl. ¶ 11; Linda Am. Compl. ¶ 11.) Alvin Robinson was arrested in Virginia Beach on the warrant on December 16, 2012, and was held in jail for fifteen days; he was released on December 31, 2012. (Alvin Am. Compl. ¶ 15.) Alvin Robinson's trial was set for June 3, 2013, at which time the charges against him were dismissed on a *nolle prosequi* motion by the Henry County Commonwealth's Attorney. (Id. ¶ 17.)

---

[5] It is unclear whether the allegation of assault made against Linda Robinson was levied by Parker or by Tiffany Watkins, the assistant coach of the women's basketball team (see Linda Compl. ¶ 9). At oral argument on the Motions, the parties seemed to allege that Watkins, not Parker, was the victim. Nevertheless, Linda Robinson alleges that Parker's statements to the Sheriff's Department formed the probable cause to issue her arrest warrant. Watkins is not a named defendant.

- 3 -

Linda Robinson was arrested on the misdemeanor assault warrant on December 16, 2012, "and incarcerated at the Virginia Beach jail." (Linda Am. Compl. ¶ 14.) She was tried on the allegations on February 14, 2013, and she was found not guilty. (Id. ¶ 15.)

Plaintiffs originally filed suit against Defendants and the Commonwealth of Virginia in state court in Virginia Beach on December 3, 2014. The original Complaints only included claims for false imprisonment and malicious prosecution. Plaintiffs filed Amended Complaints on April 24, 2015, dropping the Commonwealth of Virginia as a defendant and adding claims of malicious prosecution and false arrest under 42 U.S.C. § 1983. The case was transferred to Henry Count Circuit Court, and Defendants removed the actions to this Court on October 6, 2015. On October 8, Defendant Parker filed Motions to Dismiss in both cases, pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter was fully briefed by the parties,[6] and I heard argument on the Motions on December 17, 2015.

## II. STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. In determining facial plausibility, the court must accept all factual allegations in the complaint as true. Id. The Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and sufficient "[f]actual allegations . . . to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (internal quotation marks omitted). Therefore, the Complaint must "allege facts sufficient to

---

[6] Defendant Davis did not participate in the motions or briefing, but filed an Answer in both cases.

state all the elements of [the] claim." Bass v. E.I. Dupont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003). Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," a pleading that merely offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

## III. DISCUSSION

A. Probable Cause

The Complaints adequately allege a lack of probable cause for the Robinsons' arrest, and the Complaints adequately allege that Parker was aware of the true facts.

Counts 1 and 2 of both Complaints allege malicious prosecution (Count 1) and false imprisonment (Count 2). In Virginia, "[i]n an action for malicious prosecution, the plaintiff must prove four elements: that the prosecution was (1) malicious; (2) instituted by or with the cooperation of the defendant; (3) without probable cause; and (4) terminated in a manner not unfavorable to the plaintiff." Lewis v. Kei, 281 Va. 715, 722 (2011) (citing O'Connor v. Tice, 281 Va. 1, 7 (2011); Baker v. Elmendorf, 271 Va. 474, 476 (2006)). "False imprisonment is the restraint of one's liberty without any sufficient legal excuse." Lewis, 281 Va. at 724 (citing Montgomery Ward & Co. v. Wickline, 188 Va. 485, 489 (1948)). If the arrest of the Robinsons was lawful, they "cannot prevail on a claim of false imprisonment." Id. (citing DeChene v. Smallwood, 226 Va. 475, 481 (1984)). Therefore, if there was probable cause for the arrest, then both of the Robinsons' claims against Parker must fail.[7]

The facts in the Complaints, however, allege there was no probable cause for the charges ultimately levied against the Robinsons. The Robinsons allege that they went for a meeting with Parker and, when he became irate over the nature of their questions, the Robinsons left his office

---

[7] In order to maintain his claim of false imprisonment, Parker argues that there was probable cause for the Robinsons' arrest and, therefore, their liberty was restrained *with* a sufficient legal excuse.

- 5 -

and the PHCC campus. They expressly allege that they did not "threaten, act aggressively, confront, or in any way physically or verbally assault Watkins or Parker, and took no action which could have made Parker or the assistant coach fearful or intimidated." (Alvin Am. Compl. ¶ 10; Linda Am. Compl. ¶ 10.) Nevertheless, Parker caused an arrest warrant to be issued against Alvin Robinson charging him with felony abduction as well as misdemeanor assault (Alvin Am. Compl. ¶¶ 11–13), and Parker caused an arrest warrant to be issued against Linda Robinson charging her with misdemeanor assault (Linda Am. Compl. ¶¶ 11–12). As alleged in the Complaints, Parker's actions had no basis in fact, and therefore the charges lacked probable cause.

Parker attempts to avoid the allegations of the Complaint by arguing that one can *infer* from the nature of Parker's exclamations (as alleged in the Complaints) that *something* happened in his office that created probable cause for the warrants. This argument misunderstands the standard applicable under Rule 12(b)(6). The facts and all reasonable inferences are viewed in the light most favorable to the Plaintiffs, not to Parker. See E.I. du Pont de Nemours and Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citing Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009)). The reasonable inference to be drawn from the fact that Parker shouted, "Don't touch me," is that he was creating a false narrative to support a retaliatory scheme against the Robinsons for questioning his professional judgment. The plain facts alleged are that the Robinsons did not touch or threaten Parker, but that Parker yelled out nonetheless. On these facts, the inference to be drawn is that Parker was lying, not that the facts are different from those alleged. As such, the Robinsons have adequately alleged that the facts did not support Parker's statements to the deputy sheriff, and thus there was no probable cause for the Robinsons arrest. Without probable cause, the Robinsons have

adequately alleged the elements of malicious prosecution and false arrest, and those claims should survive.

Alternatively, Parker argues[8] that the video of the event establishes that the Robinsons did block Parker in his office and that the Robinsons were irate and had to be dragged away by their daughter. The video cannot be considered. A motion to dismiss under Rule 12(b)(6) is limited to the allegations in the Complaint and to the evidence attached thereto. Although the existence of the video was referenced in the Complaints, it was not made a part of the pleadings. As such, it cannot be considered.[9]

B. <u>Section 1983</u>

Section 1983 of Title 42 of the United States Code states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983 (2012). To state a claim for relief under § 1983, Plaintiffs must demonstrate that Parker's unlawful actions "were perpetrated under color of state law." <u>Id.</u>; see <u>Rossignol v. Voorhaar</u>, 316 F.3d 516, 523 (4th Cir. 2003); see also <u>Butler v. Sheriff of Palm Beach Cnty.</u>, 685 F.3d 1261, 1265 (11th Cir. 2012). "Section 1983 does not federalize all torts or other

---

[8] This argument is only fully addressed in the brief seeking dismissal of Linda Robinson's Amended Complaint.

[9] There is, of course, an exception that permits a District Court to rely on evidence outside the complaint where the evidence "was integral to and explicitly relied on in the complaint," and where there is no challenge to the authenticity of the evidence. <u>Phillips v. LCI Int'l Inc.</u>, 190 F.3d 609, 618 (4th Cir. 1999). Here, although the existence of a video was mentioned in the Complaints, the allegations did not rely on what was on the video, but rather on the Robinsons' first-hand accounts of what transpired. Therefore, the video is not properly before the court and may not be considered without converting the present motion to a motion for summary judgment. <u>See</u> Fed. R. Civ. P. 12(d).

- 7 -

deprivations of rights committed by a person who is a [state employee] . . . . [T]he statute covers only those deprivations committed 'under color any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia.'" Butler, 685 F.3d at 1265. "The dispositive question is whether the defendant was exercising the power [he] possessed based on state authority or was acting only as a private individual." Id. "Thus acts of [state employees] in the ambit of their personal pursuits are plainly excluded. Acts of [state employees] who undertake to perform their official duties are included whether they hew to the line of their authority or overstep it." Screws v. United States, 325 U.S. 91, 111 (1945).

"If the substance of § 1983 is not to be substantially eviscerated, however, 'its ambit cannot be a simple line between States and people operating outside formally governmental organizations.'" Rossignol, 316 F.3d at 523 (quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 295 (2001)). "Section 1983 therefore includes within its scope apparently private actions which have a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" Id. (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974)). Because "there is no specific formula for defining state action" under this standard, "the question of what is fairly attributable to the State 'is a matter of normative judgment, and the criteria lack rigid simplicity.'" Hicks v. S. Md. Health Sys. Agency, 737 F.2d 399, 402 n.3 (4th Cir. 1984) (internal citations omitted); see also Rossignol, 316 F.3d at 523 (quoting Brentwood Acad., 531 U.S. at 295).

There are several tests which courts use to determine whether an action may be fairly attributed to the state. These tests include:

- Whether the state and a private party have a "symbiotic relationship," see Burton v. Wilmington Parking Auth., 365 U.S 715, 724–25 (1961);

- When a private party carries out a "power 'traditionally exclusively reserved to the State,'" Flagg Bros. v. Brooks, 436 U.S. 149, 157–58 (1978) (quoting Jackson, 419 U.S. at 352;
- When there is a "sufficiently close nexus" between the state and the private conduct, see Blum v. Yaretsky, 457 U.S. 991, 1004 (1982);
- "Joint action" when a private party jointly participates in the alleged constitutional wrongdoing with a state or local official, see Lugar v. Edmondson Oil Co., 457 U.S. 992, 941 (1982); and
- "Pervasive entwinement," as when the state and a private party have largely overlapping identities, see Brentwood Acad., 531 U.S. 288, 296 (2001).

Here, Plaintiff only argues that there was a "sufficiently close nexus" between Parker's actions and the state. Under this test, state action is present if the state ordered the private conduct, or "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." Blum, 457 U.S. at 1004.

In the present case, there is not a sufficiently close nexus between Parker's alleged actions and his role as a state actor. Assuming that he did, in fact, lie to the police in order to procure arrest warrants for the Robinsons, nothing about Parker's position as Athletic Director "enabled [him] to execute [his] scheme in a manner that a private citizen[] never could have." Rossignol, 316 F.3d at 526.

The Robinsons argue that, under Rossignol v. Voorhaar, the nexus between the private party and the state action is created when the state actor is motivated to violate the rights of a citizen because the citizen criticizes the state actor's job performance. This conclusion overstates the facts of Rossignol. In that case, Richard Voorhaar, the local sheriff, was running for re-election. The local newspaper had been critical of his performance in the past and, on the eve of the election, was planning on running another series that was critical of Voorhaar and his friend, Richard Fritz, who was running for the position of State's Attorney. Rossginol, 316 F.3d at 519–20. Several of Voorhaar's deputies, during discussions at work and in private homes,

decided to buy up as many copies of the newspaper as possible on the eve of the election to prevent the dissemination of the critical stories. Id. at 520.

Sure enough, the election-day paper reported that Fritz had been charged with rape in 1965, and it reported about an EEOC complaint lodged against Voorhaar. Id. Late on the night before the election, but after the papers had been delivered to vendors, several off-duty sheriff's deputies went out, in plain clothes and in their own cars, and bought as many copies of the paper as they could. Id. at 520–21. One deputy "wore his Fraternal Order of Police sweatshirt with the word 'Sheriff' written on top of the county seal. Two other [deputies] carried their service weapons during the mass purchase; those firearms [were] visible on two videotapes of the incident and were noticed by at least one eye witness." Id. at 520.

On the night in question, "[m]any of the clerks who interacted with the [deputies] during the night knew that they were sheriff's deputies. One clerk testified that he sold the full supply of the paper to defendants because they were police officers, had a 'real intimidating attitude,' and made it 'real apparent [that] they could make life here a living hell.'" Id.

The publisher of the paper brought suit under § 1983, and the Fourth Circuit held that the deputies were acting under color of state law. In so holding, the Court stated, "[I]t is clear that if a defendant's purportedly private actions are linked to events which arose out of his official status, the nexus between the two can play a role in establishing that he acted under color of state law." Id. at 524. Ultimately, the Court determined that the "link between the seizure's purpose and defendants' official roles helps demonstrate that defendants' actions bore a 'sufficiently close nexus' with the State to be 'fairly treated as that of the State itself.'" Id. at 525 (quoting Jackson v. Metro. Edison Co., 419 U.S. 345, 351 (1974). This conclusion was supported by several factors, including: "defendants' ability to use their positions in the Sheriff's Department

to ensure that they would not be prosecuted . . . ," id. at 525; and the fact that "the deputies' identities as state officers played a role at several points during the seizure itself," passively intimidating clerks into selling the papers to the officers even though they did not want to sell them the papers, id. at 526.

Ultimately, although the *purpose* behind the seizure "play[ed] a role" in establishing the state nexus, "the nexus between defendants' actions and the state arose from *more than just defendants' desire to still criticism of their public performance*. Their status as sheriff's deputies enabled them to execute their scheme in a manner that private citizens never could have." Id. at 526 (emphasis added.)

In the present case, the Robinsons argue that Parker's motivation, standing alone, is sufficient to create the nexus between his actions and the state. It is not. Nothing about Parker's alleged scheme (to trump up charges against the Robinsons) was made possible—or even easier—because he was a state employee. To put it another way, anyone can lie to the police. Because Parker's actions were no more than what any private citizen could do, there is not a sufficient nexus between Parker's actions and the state to convert this private tort into a federal wrong. Accord Butler, 685 F.3d at 1267 (noting that "any irate mother with an anger management problem could have done what [the defendant] did"); Hughes v. Halifax Cnty. Sch. Bd., 855 F.2d 183, 186–87 (4th Cir. 1988) (pointing out that, in cases where the nexus has been established, the "defendants were purporting to act under the authority vested in them by the state, or were otherwise made possible because of the privileges of their employment," but that in the present case, "[t]he indicia of state authority just isn't the same"); Graves v. Austin, Case No. 4:12-cv-00021, 2012 WL 6019099, at *4 (W.D. Va. Dec. 3, 2012) ("[N]othing about Defendant's actions suggests he was able to undertake them as a result of his official status; he

could have undertaken the same actions without the authority of the badge. . . . The only action [the plaintiff] alleges Defendant took are the same acts a private individual with the same disagreement could have taken.").

Because the Robinsons have failed to allege a sufficient nexus to establish that Parker's actions were "under color of state law," they have failed to state a claim for violation of 42 U.S.C. § 1983.[10]

## IV. CONCLUSION

Plaintiffs have adequately alleged that there was no probable cause for their arrest. Therefore, their claims for malicious prosecution may go forward. A lack of probable cause, coupled with an arrest, is also sufficient to state a claim for false imprisonment, and those claims survive as well. The allegations do not, however, adequately allege that Parker was acting "under color of state law" when he filed the charges against the Robinsons. Without a proper nexus between Parker's actions and the power of the state, the Robinsons have failed to state a claim under 42 U.S.C. § 1983, and those claims will be dismissed.

---

[10] Although not raised by either party, it is worth noting that the Fourth Circuit has stated:

> There is no such thing as a '§ 1983 malicious prosecution' claim. What [the Fourth Circuit] termed a 'malicious prosecution' claim in Brooks [v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996),] is simply a claim founded on a Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution—specifically, the requirement that the prior proceeding terminate favorably to the plaintiff. It is not an independent cause of action.

Lambert v. Williams, 223 F.3d 257, 262 (4th Cir. 2000) (citing Brooks, 85 F.3d at 183).

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 30th day of December, 2015.

                                                      s/Jackson L. Kiser
                                                     SENIOR UNITED STATES DISTRICT JUDGE

- 13 -

Case 4:15-cv-00041-JLK-RSB   Document 19   Filed 12/30/15   Page 13 of 13   Pageid#: 434